The next case is Cummins v. B. Kennedy One second. Thank you and may it please the court. Bobby Hodgson for the plaintiff appellant John Kaminski appointed from the court's pro bono panel. This appeal concerns whether a partial dismissal of a case on Rooker-Feldman grounds triggers a strike under the Prison Litigation Reform Act's three strikes rule. And on that primary question that we were appointed to address, the parties in fact all agree that such a dismissal does not constitute a strike. Because the defendants, and I'm quoting here, do not dispute that a Rooker-Feldman dismissal is subject matter jurisdictional and not the basis for imposing a strike under section 1915G. What they are arguing though is that it was dismissed in the Cologne case on timeliness grounds and that the Rooker-Feldman reference was in the alternative. Why don't we hear you as to why we shouldn't accept that? Absolutely. That's wrong on the law and on the record here. So Kaminski v. Cologne is a 2019 federal case that involved two sets of claims. One set accrued from 2014 to 2016 and it challenged prison officials' actions during that time under the 8th Amendment and the 14th Amendment. Those claims were largely dismissed as time barred. But the second set of claims arose from state court decisions in 2018, meaning they accrued after 2018, specifically the 2018 state court judgments. They were dismissed under Rooker-Feldman specifically because they sought remedies for injuries that flowed from the 2018 state court judgments. How do we know that? First of all, from this court's jurisprudence on Rooker-Feldman, by definition, a Rooker-Feldman claim cannot accrue before the state court judgment is over. And here, as the district court pointed out in Kaminski v. Cologne, the state court judgments were concluded in 2018. Their entire argument rests on a premise that is false, that is that Mr. Kaminski brought the exact same case in state court and then brought it again in federal court. Isn't it possible that the district court just made a mistake, that it meant to say issue preclusion or some sort of preclusion doctrine and said Rooker-Feldman instead as an alternative ground? Well, there's no reason to believe that. Based on the record here, it is absolutely true that Rooker-Feldman precluded those claims. Number one, I would point this court, though, to the text of the three strikes rule, which does not allow this court to look at what the district court should have done or an alternative ground for dismissal. But in fact, the basis that the district court articulated the case was dismissed on. And here, the district court articulated that it was dismissed on Rooker-Feldman grounds. The district court said that those claims arose, and I'm quoting from the district court's decision in Cologne, from injuries caused by the state court judgments. It knew that it was talking about claims that arose after the state court judgments, and the record here is consistent with that. We point in our brief to the fact that the underlying complaint in Kaminsky v. Cologne, it's a 44-page complaint, and it repeatedly names the state court actors, the state court officials, and the injuries that flowed from the state court judgment. The defendants in a very conclusory statement that does not cite to anywhere in the record, let alone to his complaint, state that he made no separate claims based on the state court judgments. But that's not what the Kaminsky v. Cologne court said, and that's not what his complaint said. So I have two questions, then. One is, I read the district court. The only one that wasn't alternatively, the only dismissal that wasn't alternatively accounted for by the statute of limitations, as I understood the record, was the deliberate indifference to medical care count. I read the district court as alternatively dismissing on the basis that the plaintiff had failed to identify any personal involvement of any of the defendants in connection with that count. I think what I'm hearing you say is, that's not even the claim I'm talking about. I'm talking about some other claim that wasn't enumerated as a claim, but can be inferred from the complaint against the state court. Who are the defendants in whatever claim was dismissed solely on the basis of Rooker-Feldman? Yes, thank you, Your Honor, for the opportunity to clarify. So, to be clear, the court in Cologne identified what claims existed and dismissed different sets on different bases. So the claim that is precluded by Rooker-Feldman was a claim that named the same defendants, right, these third-party prison officials, but was making out a claim that sounded in failure to provide adequate medical care and continued injuries that flowed from the state court judgments. You know, again, this is something that the defendants attempt to use against Mr. Kaminsky, which is that he didn't name the state court as a defendant, and therefore he couldn't have been challenging a state court decision or opinion under Rooker-Feldman. But this court has held that, again, the core characteristic of a Rooker-Feldman dismissal is that it purports to name these third-party defendants, but it is actually challenging and seeking remedy for something that came from the state court's decision, and it postdates that decision. So who are the defendants in the count that was dismissed on Rooker-Feldman basis? They are the exact same defendants. They are the prison officials and Connecticut. Okay, and so are they the same defendants with respect to whom the court said, arguably in the alternative to the Rooker-Feldman analysis, failure to name—I'm dismissing this for failure to name personal involvement on that count. So the personal involvement dismissal was from the subset of claims that arose from 2014 to 2016. The court properly identified that a subset of those claims were not, in fact, time-barred, because the end of 2015 and the beginning of 2016 fell within the statute of limitations. So that dismissal was for failure to allege personal involvement, which is a requirement in order to obtain money damages. And there, we have pointed out in a brief, this is a fully alternative and separate grounds on which this court could reverse, because this is another subset of claims that were not time-barred. The court in Kaminsky v. Colon did not hold that they were dismissed for failure to state a claim, which is the enumerated ground under the three strikes. Well, we have to decide whether to— It allowed repleting. It allowed repleting. And it allowed repleting. Which did not happen then, as I understand it. So part is dismissed as untimely. Part is dismissed but without prejudice to replete. Or it's found not to be pleaded adequately. It gives you an opportunity to replete. That doesn't happen. So those are out of the picture altogether, aren't they? But that second subset is not an enumerated basis to create a strike. The fact that he did or did not replete or file a new case subsequent to that is not part of the analysis about whether a strike flows. A strike only comes— So your argument is that if you are told that you can't pursue a pressing case because you failed adequately to plead. So isn't that a merits decision? Well, here we would argue that it is ambiguous at best. He did not say it was a failure to state a claim. And he did quote language that suggested that these officials were immune from money damages, which is a separate grounds for dismissal under Section 1915A. But it is not a grounds that is enumerated in the three strikes rule. It's very complicated to sort of parse out this. But we point to persuasive case law from the Third Circuit saying that when there's ambiguity about the reason for a particular set of claims being dismissed, that should be construed in favor of a prosecution. We found discussion of lack of personal involvement, which sounds like a 12B6 ground. But the immunity, what is there that suggests that this is about immunity as to that Eighth Amendment claim? It's the fact that he did not say it was based on a failure to state a claim. He cited one Second Circuit case, Wright, which does not talk about failure to state a claim and instead talks about the requirements in order to obtain money damages. And then we cite in our reply brief a series of Second Circuit cases interpreting Wright to sound in sort of questions of Eleventh Amendment immunity when you're suing officials to obtain money damages and can't do it. So arguably that subset of dismissal was again not on a three strikes rule ground. But that is absolutely independent from the Rooker-Feldman issue, which is crystal clear. Can I ask a question about the other issue in this case? Yes. A lot of time has passed, and I'm just wondering whether he has at this point gotten a second opinion or treatment outside of the University of Connecticut. He has not. I mean, no, I am in contact with him. He has not. He is seeking it. That is what he wants this case to move forward so that the court below can get to the merits on that question of whether he's entitled to a second opinion. I want to just pursue with you a little bit the suggestion that the court did not dismiss all the claims as time-barred. I'm looking at Judge Underhill's decision at page 123 of the Joint Appendix. And the paragraph, penultimate paragraph on the page, concludes with his claims against the defendant are time-barred, and what he deals with is Kaminsky's argument that the limitations period should be told for the time he spent litigating in state court. The judge cites cases as to why there is no tolling, and he dismisses them all as time-barred. That suggests that what he's then saying is to the extent you are trying to say that, no, no, I'm complaining about the injury that flowed from the state court decision that happened later, that would be barred by Rooker-Feldman. So, I mean, but it's like you fail to state a claim, a timely claim in general, and we're not going to entertain the possibility of it being something that happened later because that would face a different bar. Why isn't that the correct way to look at what Judge Underhill decided here? Certainly, because the court didn't say, I fail to consider whether this is an appropriate claim. The court says what he found that Mr. Kaminsky did, which was to- We deal with two realities here. One, Congress did not intend for prisoners to pursue endless litigation, so they have three strikes. And two, district courts, because they want to resolve cases, will often use belts and suspenders. Now, you're saying that had the district court not written the Rooker-Feldman paragraph in here, then this might have been a strike. But because it used the suspenders as well as the initial belt, now the plaintiff gets an opportunity to come into federal court for a fourth time. I would submit that the district court here knew exactly how to create a strike. In the two other cases that are cited by the district court where there was a strike, Semple and Oney U.K., the district court, the same judge, Judge Underhill, said at the end of it, this is for failure to state a claim under Section 1915A. That creates a strike. In this case, he did not do that. He never says anything about the entire case being dismissed under Section 1915A. And instead, he parses out different claims, identifies them, and then dismisses certain ones on certain grounds. That's precisely what this court in Escalera said constitutes a mixed dismissal. Judge Underhill, if he had found that those claims were frivolous, he could have said so, and there would have been a strike, no question. This doesn't create any sort of flood of potentially unmeritorious claims because the district court always has the ability to say, I find this to be frivolous, end of story. The district court didn't do that here. And this court's precedent in Escalera requires that it be considered a mixed dismissal because some claims that have to have accrued after 2018 were subject matter jurisdictional, and that's not an enumerated basis. Is this quite on point with that? Is it different claims that are being dismissed, or is it the same claim, and the judge is saying, look, I think it all happened before 2016. But to the extent you're suggesting otherwise, it fails on Rooker-Feldman. But it's the same claim. He's just advising the plaintiff that he can't finesse it into a later period. I think it can't be the same claim under this court's jurisprudence about what Rooker-Feldman is. Repeatedly, this court has said, if a plaintiff pleads the same claims in state court and federal court, that is not a Rooker-Feldman problem. Rooker-Feldman only exists when the claim challenges what the state court action did and postdates it and seeks remedy for injuries that flow from it. So by definition, when he identified claims, and he says that definition in his opinion, that they flowed from the state court opinion and challenged state court actors and injuries that came from it, it cannot be understood to be the same claims that were brought in state court because this court said in Hobart, by definition, that's not a Rooker-Feldman claim. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Deputy Solicitor General Michael Skold on behalf of the defendants. Your Honors, I'd also like to focus on the Cologne issue, and the parties do agree that really the only question I think in this appeal is whether the Rooker-Feldman discussion in Cologne was an alternative ground to dismiss the same claims that Judge Underhill dismissed for failure to set a claim or whether it was a new ground to dismiss entirely separate claims. And in answering that question, we are going to conclude that if it's an alternative ground, that doesn't preclude it being a strike? Have you concluded if it's an alternative ground? I think the Court has been clear that as long as all of the claims can be dismissed on a covered ground, whether there's alternative grounds don't preclude a strike. And I think every other circuit that I'm aware of has said the same. And so in answering the question, we're really governed just by Judge Underhill's decision. And so I think on page JA-122, if the Court reads the decision and how he construed the complaint and what he thought he was dismissing and the grounds he thought he was dismissing it for, it's clear that the Rooker-Feldman ground is an alternative ground. And on page JA-122, he starts off by identifying the claims he thinks are in the case. And there's three buckets. There's the deliberate indifference claim. There's the due process. I'm sorry, could you give me the page number again? Yes, it's JA-122. It's the first paragraph of his analysis section. There's three buckets of claims that he identifies. And these are the same buckets he identifies on the first page of his decision. There's the deliberate indifference to medical claims. There's the due process claim based on the criminal complaints that the plaintiff filed. And then there's the state spoliation of evidence claims. Those are the only claims Judge Underhill identifies anywhere in the decision. And none of them relate to anything that the Superior Court did in the state court case. Then on page JA-123 and 124, Judge Underhill proceeds to dismiss all of those claims that he just identified on statute of limitations grounds and failure to state a claim because of lack of person involvement and failure to allege a delay that the delay in treatment caused harm. So all of the claims that he identified on those two pages are dismissed for failure to state a claim. Then on page JA-124 and 125 is when he gets to the Rooker-Feldman discussion. And he starts it off by saying, moreover, Kaminsky's entire complaint appears to be an invitation to reconsider and reject the state court decision. So he's referring to everything that he just dismissed for failure to state a claim. And then he goes on to reassert that on the next page, JA-125, after he lays out the standard for Rooker-Feldman. The first sentence he says is, Kaminsky raised the same claims against the same officials in the state case. And he says it again two sentences later. So again, he's talking about the same claims that were in the state case against the same defendants that he just dismissed for failure to state a claim. And I think the last sentence of the last full paragraph on page JA-125 is the most compelling, where he says, therefore, this court lacks jurisdiction over the instant case, particularly the 14th Amendment and spoliation claims. Those are the same claims, again, that he dismissed for failure to state a claim. So it's abundantly clear that Judge Underhill identified the claims and thought his Rooker-Feldman analysis was dismissing the same claims that he had already dismissed. And in particular, the spoliation and the 14th Amendment claims. I think your adversary's argument is that he couldn't have been referring to the same claims because Rooker-Feldman wouldn't apply to those injuries that arose before the state court action. And I think Your Honor's question to opposing counsel is exactly right. It may just be that he got it wrong. And I think, candidly, Rooker-Feldman did not apply in this case. If I had to look at it again, I don't think Rooker-Feldman did apply because he was, as I just went through, he was dismissing the same claims that were brought against the same defense. That sounds like registering a condom to me. But when we're looking at the PLRA three strikes rule, this court isn't looking to we're not re-litigating the underlying dismissal. We're not looking to see whether it was right or wrong. That's not relevant. The only thing that's relevant is what were the claims, what were the grounds for dismissal, and was one of the covered 1915 grounds sufficient to get rid of all the claims. Your adversary argued, and Judge Livingston alluded to it, that the Rooker-Feldman claims arise only after the state court action, right? If Rooker-Feldman applies, I would agree with that, yes. And if I understood what you just said, it's that that conclusion that there were claims that would arise afterwards was never reached by the district court because it concluded earlier on that whatever may have happened afterwards, Rooker-Feldman wouldn't allow this to be pursued at all. Is that right? I want to make sure I understand why you're rejecting their argument that they have timely claims, that if they were dismissed at all, were dismissed under Rooker-Feldman. I think that there was, Judge Underhill, as I read his decision, said that there was one timely claim, the deliberate indifference claim, based on the failure to discover the screw in his back. But then on page, he dismisses that claim, and that's the only timely claim that he identified. No, Your Honor, he did not grant leave to replete. He dismissed with prejudice, and he said if they want to refile, it has to be in a new case. Well, yes, they can refile. In a new case, yeah, but not in this case. Yeah, okay. But on that sole timely claim, which was the deliberate indifference based on the failure to discover the broken screw, Judge Underhill explicitly dismissed that for failure to state a claim for lack of personal involvement, and because the plaintiff did not allege the delay in discovering it caused them any harm, which is an element of a deliberate indifference claim. Well, in this case, he didn't say failure to state a claim. He said, I'm dismissing it for failure to allege personal involvement, and we're inferring that that means failure to state a claim. Is that a fair? So, again, there was two grounds. There was personal involvement, and then there was a failure to allege that the delay in discovering the injury caused him harm. The latter of those, the opposing counsel does not dispute the failure to state a claim. It clearly is. So regardless of the personal involvement issue, that alone makes the only timely claim dismissed on a failure to state a claim. But on the personal involvement issue, Judge Underhill cites Wright v. Smith, which had a separate qualified immunity discussion that it did not discuss personal involvement, and then it had a separate, after the qualified immunity discussion, it discussed lack of personal involvement as a failure to state a claim issue. And this court said very clearly, this court is well-established in this circuit that that is a requirement. Can I shift you? I'm realizing you're running out of time, and I really want to talk about the other issue in the case. So I understand that to the extent that the claimed imminent danger is understood to result from a fear that he's going to be compelled to undergo surgery from somebody who doesn't want to operate on him, that doesn't make sense. Nobody's going to force him to undergo surgery. But it seems to me that a fair reading of this complaint is he's got it documented, everybody agrees, he's got failed surgeries both in the cervical and the lumbar, he needs revisions, it's having consequences for his health and well-being, and his claim is not that he's afraid he's going to be involuntarily subjected to surgery from someone he doesn't want. His claim is that these are the only people they're letting me go to, and I want the opportunity to see a physician that isn't affiliated with them, that's independent, and you're denying me essentially the ability to treat my ongoing serious health condition. Isn't that, regardless of what we think about the merits of that claim, isn't that exactly what the imminent danger to health exception is about? Absolutely not, Your Honor. First of all, the plaintiff did not really make this argument, but let's assume that it's properly before the court on appeal. For there to be an imminent danger, DOC has offered to give him the surgery. They are the ones who have recommended the surgery, they say he needs it, and they're ready and willing to give it to him. I'm not aware of any case where a court has found imminent danger from not getting treatment when- So when you say DOC is willing to give him the surgery, do they have in-house corrections medical providers that are doing that, or are they saying we will arrange for you to go back to the same facility where you had the unsuccessful surgery? So before, up until about 2018, DOC had a contract with what was called Correctional Managed Health Care, which was an entity that provided treatment to inmates. That is no longer in existence, that is gone, they don't have that relationship anymore.  For something like this, where it's a surgery, obviously corrections staff don't do surgeries, they would refer him to the University of Connecticut Health Center, which is a teaching hospital in Farmington, Connecticut. It's a very good hospital. They would refer him to a surgeon there. So for there to be an imminent danger, and they have said they will do that. So it's not about a denial of treatment. It's about the plaintiff wanting to choose who his provider is. But the essence of his complaint is that he has fear of returning there. And I guess, I don't know, do we have to reach the merits of this complaint, or do we have to figure out whether he's just made a colorable enough statement of imminent danger? He's got a fear of going to those providers, because he has concerns about their capability to effectively address his issues. And all he wants is a second opinion from someone who's not them in the possibility of treatment. Why isn't that exactly about his health and well-being? It certainly relates to his health and well-being. That's not the standard. The standard is whether he's in imminent danger of harm if a UConn Health Center surgeon, who's board certified, performs the surgery. He has to allege facts to plausibly show that. It's not litigating the merits, but you have to have some factual basis in the complaint. And the only thing he has is that 10 or 12 years ago, he underwent a surgery by different people under a different framework that no longer exists that didn't work. He doesn't allege any facts to show that that surgery or the failed results of those surgeries were the result of negligence or incompetence. There's not a single fact in the complaint to even arguably suggest that. They just failed. And that happens sometimes. As somebody who's had back problems, I know well that it doesn't have to be a result of negligence. But even if the court could assume that those 10-year-old surgeries were the result of negligence, those are not the surgeons who are doing the surgery now. He has to allege some sort of basis to impute whatever negligence occurred 10 or 12 years ago to some entirely different surgeon 10 years later who is, again, under a different framework. It's not CMHC. And he hasn't even identified who the surgeons will be. So there's just no basis factually in the complaint or any other filing to show that he is in imminent danger of these unidentified surgeons performing surgery on him. And I see that my time is up. So unless the court has any other questions, I'd ask the court to affirm the judgment. I'll try to be very brief. Very quickly on the three strikes rule. Counsel now suggests that the Kaminsky v. Colon decision should properly have been dismissed on another ground, on res judicata. I point again to the text of the PLRA that says you have to look at what the district court did, not what it should have done, and to this court's own rulings in cases we cited, Burns v. Schnell, which is a case that Judge Raji joined, that says you cannot relitigate the merits of these decisions. That's not the three strikes analysis. And I would point again to the joint appendix at 125, where the Kaminsky v. Colon court goes through each element of a Rooker-Feldman claim and then finds that it applies in that case. He was dismissing claims that exist. On imminent danger, I think Your Honor's questions point out that the defendants here are arguing the merits. They are attempting to argue the merits repeatedly while suggesting, you know, which is against the sort of weight of the record, that Mr. Kaminsky made no allegations here. Here I'll point first to the joint appendix at 3, where the district court performed its initial analysis of his pro se complaint before they brought their IFP motion, where it is required to look for claims that are frivolous or fail to state a claim. And it allowed the complaint to proceed and held that he had alleged claims alleging deliberate indifference to serious medical needs and seeking access to outside medical care that he needed. This case was ready to move forward before the district court, and then they moved for IFP to be revoked. So he has stated a claim. I point to a voluminous set of citations to the record that we include in our briefs, the joint appendix at 10 to 11, 20 to 21, 79 to 85, 130 to 33, 139 to 40, and 151, where Mr. Kaminsky himself alleged that he had been subject to repeated inadequate medical care over a series of years. His injuries had not been discovered and, in fact, grown worse. He included, which he did not need to do, contemporaneous reports from newspapers showing systemic problems with Connecticut's provision of medical care to other people. The standard, as Your Honor pointed out, is whether he plausibly alleged it. What about the argument that essentially he's got to allege that if he's trying to avoid going to the corrections' chosen medical provider, he's got to show with more specificity that the individuals who they proposed to send him to have harmed him in the past? In light of this court's liberal pleading standard, particularly for pro se civil rights complaints like this, that is not what he needs to show. He needs to make a plausible allegation. We submit that he's done so. I would also point out that their sort of critique of that is very much conclusory and does not cite to the record. They say at some point in their brief on page 35 that the failures of previous doctors, quote, could have been for lots of reasons beyond the doctor's control. This is asking this court to make all inferences in favor of Connecticut instead of in favor of Mr. Kaminsky, which is what the liberal pleading standard requires, which is why at this stage it should move on to the merits as the court below intended it to do when it did its initial 1915a analysis. Let me ask you, to the extent that fear is what we're focusing on for a moment, to the extent that the defendants have said they no longer have a contract with the former entity and he will not be treated by the doctors that he has concerns about, what more do you want to assuage the fear? I think that needs to be developed. That is not on the record here. That's something they're offering to this court here. I think that's a question that goes to the merits. I mean, I don't mean to ever trivialize concerns, but it's a representation made by an officer of the court. Do you want it in writing? I mean, what more do you want to ensure that your client doesn't have to have a fear that he's going to be treated by the same physicians? Well, I think the idea is that he wasn't just saying these particular physicians. He was saying, I have a history of inadequate medical care that spans years and years, several failed surgeries that have only gotten worse. I think I'm entitled to an outside specialist. We've cited cases in other circuits where that precise question of chronic back pain and spinal injury and a request for an outside specialist was sufficient to trigger the imminent danger standard. See, that's different. Now we're saying it's enough for you to say you're not a strike and you can sue. I'm asking you more, how does your client get the treatment that everybody agrees he needs without the fear he has? And, you know, one of the consequences of that might be that that can't be the ground for excusing three strikes. But, I mean, I would think that would be his primary concern. How does he get the treatment without risking being done by people he thinks harmed him in the past? I think that's a question that needs to be developed before the lower court at this point. And the way to do that is to allow the case to proceed. It also stretches everything out. Doesn't he want to have the surgery? I think he certainly wants to have the surgery, but he also wants to have adequate medical care. I agree. But I think that would happen much faster if they are, you know, And the merits haven't yet been decided, and this case should move forward in the lower court. So I suppose if they consented to the relief that he seeks, which is a referral to an outside provider and then treatment as follows, that would end your case regardless of the three strikes. That would be the relief he's seeking, isn't it? I think that would end the underlying case, but I certainly can't make representations about the specifics of what they're offering. Thank you, Your Honors. Thank you both. Very well argued. And thank you, Mr. Hodgkins, for assisting the court in this matter.